May it please the court, I'd like to reserve three minutes for rebuttal. The plaintiffs in this multi-district litigation lacked standing to seek injunctive relief for three distinct reasons. First, because they were not and are not at risk of future injury or deception. Second, because their purchase decisions do not depend on the injunctive relief or label disclosures that they are seeking. And third, because the injury they claim is speculative or remote, not certainly impending or imminent as is required to establish standing. I'll go through each of those one by one. First, with regard to injury, the plaintiffs in this case, the individual class representatives, are well aware of key facts, namely that Coca-Cola or Coke, the beverage, contains phosphoric acid, that the phosphoric acid in Coke is artificially derived, that the phosphoric acid adds a tart taste to Coke, which balances the sweetness of the beverage, and that the phosphoric acid lowers the pH or raises the acidity level of the beverage, which makes it less susceptible to growth of microorganisms or spoilage. All of that is known to these plaintiffs and it's not in dispute between the parties. The only dispute is whether these properties of phosphoric acid make it a so-called artificial flavor or a preservative within the meaning of the FDCA and implementing FDA regulations. Plaintiffs say they do. Coca-Cola believes they do not. That's the dispute in this case. An injunction that requires Coca-Cola to add label disclosures that reflect views the plaintiffs already hold will not provide these individuals with any new information or prevent them from being deceived in the future. They say their injury is they don't like being lied to. That's how I read the briefing, right? That there's these two statements that the ingredient is not hidden, it's listed, and then there's this representation about whether that ingredient has certain characteristics and they think that's inconsistent, right, with what the ingredient is or does and that they've been lied to. What's your response to that? I think that that's a fair description of what they are claiming, your honor, but when a consumer learns of a purported deception and knows that nothing is ever going to change, which would make it such that they can once again be deceived or confused by a product label, they have no ongoing injury. It seems to me honestly that your case is stronger than that because they're not exactly claiming that they were lied to. They're claiming that they were not given the right regulatory label on the label. They weren't, they were told exactly what was in there and they had every way to figure out what it was. What troubles me about your argument is it would seem to apply even if they were literally lied to. I mean, suppose the ingredient list said that there was applesauce in there and there was really phosphoric acid, but they, through the litigation, they found out that there was phosphoric acid. At that point, they have no interest in, certainly the world has an interest in not having a label that says that there's applesauce when there's phosphoric acid and if any plaintiff gets out of the group of the world just because he investigates enough to find out, we have a very funny rule at that juncture. Is that what you're arguing or is your argument more discreet because here there was no lie in the label. It's just a question of what regulatory terms should have been plugged on it. I think it's somewhere between those two extremes, your honor. To be fair to the plaintiff's case, there are two kinds of label infirmities that they are challenging. One is that the ingredient list, although it identifies phosphoric acid as being present, it doesn't affirmatively disclose, as they contend it should, that phosphoric acid purportedly qualifies as an artificial flavor and as a preservative. So that's the omission. It says the contrary, right? Plaintiffs would say it says the contrary. That's why they say they're lied to, isn't that right? Yes, but what I just described is on every single container of coke. I agree, I agree. I'm not trying to argue with you. I'm just trying to, which I think you're trying to do, characterize their claim and then talk about it. I have a bigger problem on another part of their claim, but go right ahead. Yes, your honor. They do allege in addition an affirmative misrepresentation because on certain beverages, about 20 percent of the class period, there was an affirmative statement, no artificial flavors, no preservatives added since 1886, what we call the Pemberton claim after the inventor of coke. So we're dealing with both kinds of misrepresentations or omissions here. The problem though is that in a situation that we're in, where the product is static, the ingredient list is static, and there's no prospect whatsoever of any kind of a change that impacts these facts. I mean, this is coke. It's been around for 135 years, and it's always had phosphoric acid in it, and the phosphoric acid has always done the same things. They can't possibly be deceived or injured again in the future, and it's quite a different situation from what the court faced in Davidson, where the wanting flushable wipes, believing that they were flushable because the product said so, and then said, well, if I encounter this product in the future, how am I ever going to know whether it's now been made flushable, or alternatively, whether the manufacturer is still lying to me. There's no way I can figure that out unless the court issues an injunction that prohibits further misrepresentations about the product. Here, these plaintiffs know everything they could possibly want to know about coke. They believe that phosphoric acid qualifies from a regulatory standpoint as an artificial flavor and preservative, and if they don't want drinks that contain those ingredients, they don't have to buy the product, but they're not being deprived of any information they don't already know. Okay, now, all right, so the next person walks in the store, who isn't a current plaintiff, and they say, oh, it says no artificial flavors or preservatives, and then they look at the back and they say, oh, it says phosphoric acid, but I don't really know what that is, and so that person doesn't know. So, can that person file a lawsuit because they don't know? That person could file a lawsuit for damages at that point, and I know in the Davidson decision, the panel referenced the fact that there would be an anomaly in the panel's view if the primary remedy available under California state law, which is an injunction, were not available to a previously deceived consumer, and we're not, I want to be very clear that we are not taking the position that the defendant in Davidson advocated and which is the law in the second and several other circuits that a previously deceived consumer can never have standing. We're simply saying that on the facts of this case, where the plaintiff already knows everything they could possibly know or want to know, they have no risk of future injury, and your honor, damages are a major deterrent to after a manufacturer that makes a misrepresentation, whether a consumer can or not, and at the end of the day, we're dealing here with the United States Constitution and its standing requirements, which simply must trump any state law interest in providing standing to individual consumers. But the reason I was trying to set up the hypothetical I was is that the way this is more a version of mootness than of standing, i.e. you have a person who is in fact ignorant and then becomes knowledgeable either after they file the lawsuit or in order to file the lawsuit, but there is a huge group of people who don't know this, and as soon as they do know they morph into an inappropriate plaintiff, but it's a time frame, and in other words, it's because they became knowledgeable. It's not because they were knowledgeable to begin with. So in a way, it feels to me more like a Sosna versus Iowa mootness problem, although I know they are supposed to be a certified class before, but you can't ever get a certified class before because as soon as somebody files a lawsuit, Coca-Cola comes and says, well, you know, this is what the truth is, now you know the truth, and now you are no longer able to bring a lawsuit. I understand that's where we are, but it's mighty peculiar. So the question, and the Davidson Court, I don't know if you realize that, was obviously bothered by that. That problem, that your position here is that this is a more discrete problem, essentially. This is a very discrete problem, and they've got two other major problems withstanding that the Davidson plaintiff did not have. Number one, in this case, the plaintiffs all admit that they're actually not really even interested in whether or not Coke contains artificial flavors or preservatives in terms of making purchasing decisions. They would just like to know that it's properly labeled, so they're not looking for information like the Davidson was, is this flushable or not, to make an actual purchasing decision. Is part of that, are you baking in the record, which I think is that they would consider buying if it was labeled the way they think it should consider, forgive me, that they would consider buying Coke if it was labeled the way they think it should be, as opposed to committing that they would in fact buy it. Yes, your honor, there are two issues with the consider. One is that, as I was saying, all they're looking for, they're not looking for a change like the removal of artificial flavors or preservatives, which would be akin to what the Davidson plaintiff was looking for, and actually a different product. They're looking for a label that says what they already believe to be true. The second part is that consider is simply, would consider isn't good enough to establish certainly impending or imminent injury, and actually this court in a case that was decided after Davidson by a couple of months, the Ladova's case, dealt with exactly this situation where the plaintiff said that she or he would consider purchasing the product if it were able to and the court said that's not an imminent injury under Supreme Court and our case law. For all three of those reasons, these plaintiffs lack standing. I just want to say a couple of quick words on commonality, which is our other issue for reversal. In this case, the plaintiffs were required to come forward with some evidence from which the court could conclude that they could prove their class-wide claims of injury, reliance, and materiality with common evidence, common to all the plaintiffs or all the absent class members, I should say. They did not do that here. They came forward with absolutely no such evidence and the district court abdicated its responsibility to analyze the record and determine whether those claims could be so proven. It seemed to me that that discussion really went to the merits. The facts that you were relying on to show that it wasn't material, there was some dispute in the record and the question is if two percent or four percent or you know what percent of people care about this, is that material or not material? So I couldn't see why that wasn't a merits problem. It's not a merits problem, your honor. I mean obviously there's overlap between the class certification and merits stages, but when we're dealing with percentages that were in most instances were not statistically significant at all and which affect somewhere between two and at most five percent of absent class members, that's it's not material. But that's a merits question whether it's material. No, no. If all the evidence is that 95 to 98 percent of absent class members don't care about this issue, which by the way is intuitively correct, most consumers aren't really concerned about these ingredients in Coke. They know Coke and they drink it because they like it. Then you can't have... Let me just revise the class of the people who do care. Well that would be no way to identify such people, your honor. They have to prove a common injury for class members and there was no evidence in this case that there was a common injury. I see I'm into my rebuttal time, so unless there are questions... You're worse than into your rebuttal time. You're into your rebuttal time is about to run out, but I'll give you a couple. Thank you, your honor. Mr. Glatter. Thank you, your honors, and may it please the court, Joshua Glatter of Fleischman, Bonner, and Rocco on behalf of Appelese and the class. Your honors, this court should affirm the very considered decision of the district court below. The defendants have failed to show that the district judge abused his discretion, nor did he make any clear error of law. The bedrock principle that informs these cases was set forth by this court in Davidson in 2018, and in that this court made clear that the fact that a plaintiff now believes that a product is mislabeled does not deprive that plaintiff of standing to seek conjunctive relief. That principle was reinforced by this court again just this past July in Moore v. Morris Pet Care at footnote 13. When that bedrock principle is considered, it's clear that with all due respect to the defendants... The difference there was that in those cases, people wanted to buy a product with certain characteristics, i.e. in Davidson, they wanted to buy a plushable wipe, not a non-plushable one, and their concern wasn't just that the label wasn't accurate at the beginning, and leave aside the change of product. Their problem was that they needed to know whether what they were buying was the product they wanted, i.e. a plushable wipe. Here, as I understand the allegations, the plaintiffs don't have any problem drinking coke with the additive in it. Their problem is just that they don't like to be lied to, as Judge Christian said. Why, I want to buy coke out of a bottle that tells the truth, but I'm willing to drink the coke. Isn't that an entirely different situation? Their interest isn't in informing their decisions. Their interest is simply in abstractly having a regulatorily accurate container. Your Honor, let me respond. The plaintiffs here do not have an academic interest in just having something comply with FDA regulations. In fact, were that to be the case, it would present all sorts of preemption issues. Here, the key point is that this is not a binary decision akin to Davidson, where it's, I either want to buy a flushable wipe or I don't want to, because that doesn't really accord with many consumer decision-making, particularly when it's something like a sugar-sweetened beverage such as coke. It certainly does with regard to flushable wipes. There are all kinds of reasons, namely, not to clog up either your plumbing or plumbing at large. Why, people affirmatively want to buy flushable wipes and not non-flushable ones. Yes, Your Honor, but in this case, a plaintiff is going to want to know a number of things. They may decide based upon learning, one, what phosphoric acid is and what its role is, and two, what other ingredients are, whether there's any artificial flavors or any chemical preservatives in the product, a number of things. How much will they buy? How often are they going to buy it? For whom are they going to buy it? It's a much more complex taxonomy that any normal consumer with this sort of product is going to go through. For example, two of the plaintiffs, as the court is aware, have continued on occasion to either buy or consume coke, or in one case, purchase for their children. But what they are deprived of as we sit here today is adequate information so they can make those decisions as to whether their purchasing habits need to change. And I would respectfully submit that that is precisely- Can we break this up? You're kind of getting into the other natural flavors part, even though that's never been the focus of this lawsuit, right? You don't have any evidence that that's not true. Well, Your Honor, if we look at what we've termed the Pemberton claim in this case, that was a label statement that said the following, no artificial flavors, no preservatives added since 1886, that it didn't have them and never had. It didn't say phosphoric acid isn't an artificial flavor or chemical preservative. So having been lied to once and knowing now or believing that the phosphoric acid at a minimum is an artificial flavor chemical preservative does not deprive them of standing. Because even if phosphoric acid was removed, or even if it remains in, there are other ingredients, whether it's high fructose corn syrup, whether it's the well-known secret formula to coke. And this is exactly the first example, non-exclusive example, that Davidson contemplates. And in Davidson, this court pointed out that absent injunctive relief, and I quote, the consumer won't know if it makes sense to spend her money on the product. And this court cited Jamba Juice and Reese for that proposition. So where the injury to the plaintiff occurs, and respectfully, I think this is what the defendants are missing, is not some sort of academic interest in whether or not it complies with FDA regulations. It's being able to rely on the representations going forward, having been lied to previously, and being able to have adequate transparency on the label so that they can make the sort of normal decisions that often come up in standard consumer behavior. And I would submit, Your Honor, that the Twining's case is not to the contrary. In Twining's, the issue was a factual issue. It was not a legal issue. In Twining's, the problem was that the plaintiff in that case had given a interrogatory answer that, as best as one can tell from the decision, simply said, I would consider without providing the slightest bit of insight as to what would go into that consideration. And more importantly, thereafter gave sworn deposition testimony where she testified that even if the product was in a light of those circumstances, it's no surprise that the district judge in Twining's exercising its discretion declined to wait the interrogatory response and unsurprisingly waited the deposition testimony. What I would submit Twining's did not do is engage in some sort of semantical or grammatical analysis of the difference between I would consider, I would like to, I plan to, I intend to. In all of those... That was not the focus of my question, actually. The focus of my question was that the claim here doesn't seem to be that they know what's in the product now and they are not contending that that product with that ingredient is unacceptable to them. They are saying it would only be acceptable to them if it had the right label. I'm sorry, Your Honor. My understanding is that that is the thrust of the... Even the, you know, I would consider it. What they would consider is buying if it was properly labeled. They don't say I will buy this sometimes. Now that I know what's in it, I won't buy it. Only I would buy it if it's properly labeled. No. So they don't seem to be caring about what's actually in it. They only care about the label. Your Honor, I respectfully disagree with that construction. What the plaintiffs here want to know is adequate information to make several decisions. One of them, which you just touched upon, is whether they will buy it at all. Another one is if they're going to buy it, how much of it are they going to buy? Are they going to balance it out? Are they... If they've been buying it in 20-ounce bottles and they now know... Why does that matter? Why does that matter? I'm sorry, Judge Kristen. Why do those sub decisions matter? I'm not following that. It seems to me... You made a statement about they say they would buy it if it's appropriately labeled. And I'm really concerned about that. Because as I read the record, they say they would consider buying it if it was appropriately labeled. So I want to hear your answer to that. But I don't understand why it matters whether they would consider and they would need to make decisions about how much to buy and for whom they would buy. And why does that change the standing analysis? The reason it changes... Each of the plaintiffs here has standing under Article III because they aren't just abstract people in the universe who've never purchased the product before. They've all purchased it. All of them would consider purchasing it to some degree in the future. Some of them may purchase far less of it than they ever have if it's conclusively determined that phosphoric acid is in fact an artificial flavor or chemical preservative. Because they don't know that right now, Your Honor. Right now, all they know is what their lawyers have concluded in our own investigation. And Davidson makes clear that just because the plaintiff knows it now or believes that it was adulterated in the past does not therefore mean that they lack standing. So the kind of consumer decisions I'm talking about are not simply binary, that they will never buy it at all or they will always buy it. Any normal consumer behavior, if for example, I know that in fact that phosphoric acid is determined to be a chemical preservative or an artificial flavor, I may buy half of it. I may cease buying other products. But those are labels. What they know is that it does enhance flavor and it does act as a preservative. And so why do they need to know what label you plug on that except as a regulatory matter? In other words, if you want to call it an artificial flavor, that only has significance because the FDA has a category called artificial flavor. What you know is that it does affect the flavor. It makes it more tart. And you know that it is a preservative. So what's the difference if an FDA label is plugged on and isn't plugged on? Well, there are a couple of things to unpack there, Your Honor. First of all, and I think some of what you're asking touches upon Mr. Fischer's point, that phosphoric acid will eternally remain in the product. First of all, the plaintiffs do not know that. We don't know that. And with all due respect, I'm sorry, I missed what you said. That phosphoric acid will what? That will eternally remain in the product. That is a merits question that cannot be determined at this time. Nobody at this point knows whether Coke is ever considered removing. What I'm asking you is whether these individuals, put that to one side for right now. My understanding is that their argument is, is it not true that they would say that my decision whether to buy this will be affected by whether the label says it's an artificial flavor or a preservative, even if it's exactly the same thing with exactly the same characteristics of which I'm quite aware? No, Your Honor. Respectfully, no. Because first of all, what the plaintiffs want to know is that at a minimum, Coca-Cola is not going to come out in the future and put on something similar to the Pemberton claim that says no artificial flavors, no chemical preservatives, no matter what's in the product. It's not just their sheer interest in abstract labeling. Even if they make the decision that they can tolerate phosphoric acid, they cannot realistically have confidence that they're being told the truth about any other ingredient in the product. So on that score, that is why they need to make sure that it's up to Coke if it wants to keep phosphoric acid in the product. But if it's going to do that, it's got to be truthful in multiple respects. It's got to be truthful in terms of what's on the ingredient list, and it's got to be truthful in terms of what it boasts or advertises about the product. That's why in Moore, quoting the Kwikset case, this court said labels matter, and labels matter in multiple respects. And as I've tried to hopefully enunciate, they matter much more than simply will I buy the product at all, but will also affect multiple purchasing decisions for a product like this for them and others. Your Honor, I know that my time is starting to run down. So there is one other point I do want to touch upon. Even if phosphoric acid remains eternally in the product, product reformulation is not necessary in order for the plaintiffs to have standing. That is potentially a sufficient condition, but it is not a necessary condition. That is ultimately Coca-Cola's decision, and if it chooses to keep that ingredient in this product, then it's got to be completely honest about it and all other ingredients. All that matters is that the label is truthful. And lastly, I would like to also touch upon Mr. Zaleson's comments with respect to commonality. Judge Berzon, I think you hit the nail directly on the head. That is entirely a merits-related issue. I appreciate defendants' effort to spin their own internal studies and bolster their experts' decision, but from a standard of review, in order for this court to overturn the district judge's decision in those regards, it would have to demonstrate under both Stearns and Abdullah that his decision in that regard was entirely illogical, implausible, or found absolutely no basis in the record. And I respectfully submit none of those three standards could be addressed. With that, I see that my time is up, but I'm happy to answer any other questions the court may have. Thank you very much, Mr. Zaleson. Let's give you a few minutes. Thank you, Ron. Can I ask you to address whether the fact that there are other ingredients that are said to be natural ingredients, I understand there's a statistical formula and all that, does essentially serve a parallel role, as in Davidson, to the possibility of change of product in the sense that there is an interest, a continuing interest, in the accuracy of the label that is not because of, and the label at front, which is not directly linked to the phosphorus, the phosphoric acid inclusion, except if one gets a decision that that was untruthful. And if that was untruthful, why isn't there a continuing interest in an injunction saying that Coke can't use this untruthful statement as to any ingredient as opposed to just the phosphoric acid? I think we're talking about litigating a case that hasn't been pled and has never been litigated and certainly is not this case. This case is about phosphoric acid beginning, middle, and end. There's no allegation that the natural flavors used in Coke and that appear on the ingredient list, in fact, are natural, they're artificial. And if they litigate this case to judgment, and get the judgment they seek, that phosphoric acid qualifies under FDA regulations as an artificial ingredient. Well, maybe they've asked for the wrong injunction, which I need to look into. Well, we're dealing with the lawsuit that we've had. Just a minute. I mean, the Davidson-Ari case wasn't about a reformulation of the product either. It's simply what is the interest in a continuing injunction given the past episode? Is there something that will happen in the future that is similar and could be that would grow out of the facts of this case? The injunction in Davidson that the plaintiff said she needed was an injunction against them lying about whether the wipes were flushable. It's an injunction about lying about whether there are artificial flavors or preservatives. Right. And the only one at issue here is phosphoric acid. So, again, there is not be an injunction in this case under any circumstances that says that Coke can never make a misrepresentation on its label. Of course, we don't make misrepresentations, but that's not what this case is about. But it's not a different misrepresentation. It's the same misrepresentation. It's actually not, Your Honor. And there is a distinction between taste on the one hand and flavor on the other hand. And that's what the FDA regulation merits dispute is about. But there's no contention in this case other than what was flung in on appeal that maybe one of the natural flavors isn't really natural. And that's just not that's not pled. It's not been alleged by the plaintiffs. There's just not a whiff of that anywhere. What this case is about is whether this ingredient that we all agree is artificial phosphoric acid qualifies as a flavor because it aspartame. It's not a flavor, even though it affects taste. And that's what the case is actually about. But the injunction they would get would not address the problem that Mr. Glatter and Your Honor are referring to, which is what if there's some other misrepresentation that no one knows about yet? That's not what this case is about. It wasn't what Davidson or any of these cases are about. The question is whether the injunction sought can can prevent an injury or a deception of these individuals. And because all we're talking about is a regulatory classification, not information or facts, it cannot. And for that reason, they lack standing. What about the Pemberton claim? I mean, the Pemberton claim is so much broader. Don't they have standing for the Pemberton claim? Because how would you know, as Judge Berzon noted earlier, when you read that statement on the front and you turn around and you see a no idea what they are? How do you know if those are artificial flavors or preservatives? Again, Judge Beatty, there's never been an allegation in this case that any ingredient in Coke other than phosphoric acid is mislabeled or qualifies as either one in either one of those categories, artificial flavors or preservatives. So if the question is, how do they know that there's not some other undisclosed ingredient that we're not telling anybody, lying to the entire world, including the FDA about, I honestly don't even know how to answer that question. But it's not what the litigation, what this case is about. It's not what's pled. It's not what discovery is about. It's not what these plaintiffs have claimed. And although you're correct that the only one ingredient that purportedly violates or runs afoul of those statements, and that's phosphoric acid. So again, that's my answer. Okay, your time is up. And thank you both for really quite a helpful argument in a difficult case. In Gurusov versus Coca-Cola is submitted and you are adjourned. Thank you, Your Honor. This court for this session stands adjourned.
judges: Berzon, Christen, Bade